UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ALYNNA EDOUARD,

        Plaintiff,

v.                              Civil No. 2:22cv263

JOHN S. CONNOR, INC.

        Defendant.

## OPINION AND ORDER

In this action, Plaintiff Alynna Edouard ("Plaintiff") asserts claims under the Americans with Disabilities Act of 1990 (the "ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981") against defendant John S. Connor, Inc., ("Defendant"). Defendant moves to dismiss Plaintiff's complaint (the "Complaint") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 11, 12. After examining the briefs and the record, the Court **DENIES** Defendant's request for a hearing, ECF No. 15, because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to dismiss. ECF No. 11.

1

## I. FACTUAL AND PROCEDURAL HISTORY[1]

In January 2019, Defendant hired Plaintiff as an "Import Logistics Coordinator Non-Vessel Operating Common Carrier."  ECF No. 1 ¶ 9.  Between March and August 2019, Plaintiff experienced "constant comments about her national origin, Chinese, and appearance" from her direct supervisor Connie Coffield.  Id. ¶¶ 11-12.  Almost daily, Coffield "ask[ed Plaintiff] why or assert[ed] that Chinese people, like [Plaintiff], would 'eat rats, cats, and dogs.'"  Id. ¶ 13.  Coffield encouraged Plaintiff's co-workers to do the same, and two of them made similar comments to Plaintiff.  Id. ¶ 14.  Coffield also repeatedly asked Plaintiff "why Chinese people are so tiny and why [Plaintiff] was 'so skinny[,]' 'so tiny[,]' and 'wore heels daily.'"  Id. ¶ 16.  Coffield did not make similar comments about Plaintiff's co-workers, who were "non-Chinese" and "mostly white."  Id. ¶ 17.  Coffield's comments toward Plaintiff persisted, even after Plaintiff "made known her discomfort" with the remarks, and "Coffield made it a habit to corner [Plaintiff] in private situations and threaten her with termination of employment."  Id. ¶ 18.

On July 28, 2019, Plaintiff was "severely injured in a car accident," suffering "injuries to her back, knees, neck and feet."

---

[1] The facts recited here are drawn from the Complaint and are assumed true and construed in the light most favorable to Plaintiff for the purpose of deciding the instant motion to dismiss.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Id. ¶¶ 19-20. Plaintiff immediately informed Defendant about her injuries and requested to be allowed to work from home as a disability accommodation. Id. ¶ 20-21. Plaintiff could have performed all of her job responsibilities while working from home. Id. ¶ 21. Defendant denied Plaintiff's request to work from home, "despite allowing similarly situated employees to work from home" and "advertis[ing] on [its] website that [it] routinely allowed employees to work from home." Id. ¶¶ 22-23. Defendant also "refused to engage in any interactive communications with Plaintiff" regarding her injuries or potential accommodations. Id. ¶ 22. Defendant thereafter terminated Plaintiff's employment on September 11, 2019. Id. ¶ 24.

On November 19, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, listing "national origin" and "disability" as the bases for the alleged discrimination. ECF No. 1-1. At Plaintiff's request, the Commission issued a right-to-sue letter dated March 31, 2022, and terminated its investigation into Plaintiff's Charge of Discrimination. ECF No. 1-2. Plaintiff timely filed suit in this Court on June 28, 2022, alleging violations of the ADA, Title VII, and § 1981. See generally ECF No. 1.

On November 16, 2022, Defendant moved to dismiss Plaintiff's Complaint in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 11.

Plaintiff timely filed an opposition brief on November 30, 2022, ECF No. 13, and Defendant timely filed a reply brief, along with a request for a hearing, on December 6, 2022, ECF Nos. 14, 15.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of . . . what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (ellipsis in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint fails to state a claim under Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Although a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citation omitted). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Neither "[t]hreadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," suffice to meet the plausibility requirement. Id. (citing Twombly, 550 U.S. at 555).

Because a motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, a district court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Kensington Volunteer Fire Dep't v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks omitted) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Twombly, 550 U.S. at 555 (ellipsis in original) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Although the truth of well-pled facts is presumed, a district court is not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted); see also Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Defendant contends that, with respect to each asserted cause of action, Plaintiff has failed to plead sufficient facts to state

a claim upon which relief can be granted.  Thus, the Court will consider, in turn, the sufficiency of Plaintiff's allegations with respect to each of Plaintiff's five asserted causes of action.

### A. ADA Claims

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee" is also a violation of the ADA.  Id. § 12112(a), (b)(5)(A).  Plaintiff alleges that Defendant violated the ADA first by failing to accommodate Plaintiff's disability and then by terminating Plaintiff on the basis of her disability.

### 1. Failure to Accommodate Claim

Plaintiff alleges that Defendant failed to provide reasonable accommodation for her alleged disability by failing to allow her to work from home. ECF No. 1 ¶¶ 25-31.  In order to "state a claim for a failure to accommodate, a plaintiff must allege that (1) [s]he suffers a disability; (2) h[er] employer had notice of the disability; (3) with reasonable accommodations, [s]he is otherwise qualified to perform the employment position in question; and (4) h[er] employer refuses to make such reasonable

accommodations." Terry v. Perdue, No. 20-2016, 2021 WL 3418124, at *2 (4th Cir. Aug. 5, 2021) (citing Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013)). The Fourth Circuit has explained that, "[a]lthough plaintiffs need not prove their prima facie case at the pleading stage, they must allege facts sufficient to state all the elements of their claim." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 751 (4th Cir. 2018) (cleaned up).

Defendant argues that Plaintiff has failed to plead the first element because she "does not allege any facts that would support an assertion that her injuries rise to the level of a disability under the ADA." ECF No. 12, at 5. The ADA defines the term "disability" to mean, in relevant part, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function." Id. § 12102(2).

Here, Plaintiff alleges little more than the conclusory legal assertions that she "is a 'qualified individual with a disability' as that phrase is defined under § 101 of the ADA" and that, due to her "permanent" disability, she is "significantly limited in the

major life activities of working and related activities." ECF No. 1 ¶¶ 2, 3. While Plaintiff alleges that her disability stems from a July 2019 car accident that gave her "severe[] . . . injuries to her back, knees, neck and feet," id. ¶¶ 19-20, she provides no further factual allegations to explain the nature of her asserted disability or even which major life activities are impacted. The Court therefore finds that Plaintiff has failed to allege that she suffers from a disability within the meaning of the ADA and, therefore, that she has not stated a claim for failure to accommodate under the ADA.

### 2. Wrongful Discharge Claim[2]

Plaintiff next alleges that she was wrongfully terminated by Defendant in violation of the ADA. Id. ¶¶ 32-37. To state a claim for wrongful discharge under the ADA, a plaintiff must allege "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015). Ultimately, "[d]isability discrimination may be proven through direct and indirect evidence or through the McDonnell Douglas burden-shifting framework." Id.

---

[2] Plaintiff's offers a number of arguments in the "Wrongful Termination" section of her opposition brief that actually concern her failure to accommodate claim. See ECF No. 13, at 4-5. The Court has considered those arguments in the context of that claim and addresses them supra in Part III.A.1.

(citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973); <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 49-50 & n.3 (2003)).

As an initial matter, this claim must be dismissed for the same reason as Plaintiff's failure to accommodate claim. Plaintiff's Complaint alleges insufficient facts to support the legal conclusion that she suffers from a disability under the terms of the ADA, a required element of both of her ADA claims. Defendant also argues that Plaintiff's claim fails because she has not alleged that she was meeting Defendant's "legitimate expectations" at the time she was terminated (i.e., that she was a "qualified individual"). ECF No. 12, at 6-7. Indeed, Plaintiff alleges only that "<u>[d]uring her first several months of employment</u>, Plaintiff was notified that she was doing her job in a satisfactory fashion." ECF No. 1 § 10 (emphasis added). She pleads no additional facts in support of this contention and, more significantly, offers no allegation that she was meeting Defendant's "legitimate expectations" <u>at the time of her termination</u>, approximately eight months after she was hired. <u>See</u> <u>Jacobs</u>, 780 F.3d at 574 (noting that, as part of the "qualified individual" element, a claimant must show that "at the time of her discharge, [she] was performing her job at a level that met her employer's legitimate expectations" (internal quotation marks and citation omitted)). Therefore, the

Court concludes that Plaintiff's ADA discharge claim also fails for this independent reason.[3]

For the foregoing reasons, the Court finds that Plaintiff has not stated a plausible claim for wrongful discharge in violation of the ADA.

## B. Title VII and § 1981 Claims

Plaintiff asserts three causes of action concerning alleged discrimination on the basis of Plaintiff's national origin and/or race: (1) a Title VII national origin discrimination claim; (2) a Title VII hostile work environment claim; and (3) a § 1981 racial discrimination claim.[4]   Title VII, in relevant part, prohibits

---

[3] Defendant also argues that Plaintiff has failed to allege that her disability was a but-for cause of her termination, as required to state a wrongful discharge claim under the ADA. Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 235 (4th Cir. 2016). Although it is a close call, the Court concludes that, drawing all reasonable inferences in Plaintiff's favor, she has alleged sufficient facts to meet the causation requirement at this early stage in the case.   Plaintiff's allegations offer little detail about the circumstances of her discharge, but given the alleged severity of her medical condition, it is reasonable to infer that whoever was the decisionmaker in Plaintiff's termination was also aware of her asserted disability and need for accommodations.   Moreover, her allegations place her car accident and requests for disability accommodations in close temporal proximity to her termination. See, e.g., Jones v. HCA, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014); Mattamu v. Cnty. of Fairfax, Virginia, No. 1:20cv1468, 2021 WL 4477300, at *5 (E.D. Va. Sept. 30, 2021).

[4] Although the § 1981 claim set forth in the Complaint relates only to Plaintiff's allegation of racially discriminatory termination, ECF No. 1 ¶¶ 55-61, Plaintiff's opposition brief appears to characterize her Complaint as alleging both discrimination (adverse employment action) and hostile work environment claims under both Title VII and § 1981, ECF No. 13, at 5.   To the extent Plaintiff takes the position that she has alleged a § 1981 hostile work environment claim, that position finds no support in the Complaint. Regardless, even if Plaintiff's Complaint could be construed to include such a claim, it would require dismissal for the very same reasons as Plaintiff's Title VII hostile work environment claim. See discussion infra Part II.B.2.

employers from "discharge[ing] any individual, or otherwise []
discriminat[ing] against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or
national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also is
violated "[w]hen the workplace is permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment." Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 21 (1993) (cleaned up). Similarly, "Section
1981 provides, in relevant part, that 'all persons . . . shall
have the same right . . . to make and enforce contracts . . . as
is enjoyed by white citizens,' and guards generally against race-
based discrimination in the workplace." Lemon v. Myers Bigel,
P.A., 985 F.3d 392, 399 (4th Cir. 2021) (ellipses in original).
The Court analyzes Title VII and § 1981 claims under the same basic
framework. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir.
2004) (citing McDonnell Douglas, 411 U.S. at 802-05); see also
Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 n.7 (4th
Cir. 2002) ("The required elements of a prima facie case of
employment discrimination are the same under Title VII and Section
1981." (citing Gairola v. Commonwealth of Va. Dept. of Gen. Servs.,
753 F.2d 1281, 1285 (4th Cir. 1985)).

## 1. Discrimination Claims

Plaintiff alleges that Defendant discriminated against her by terminating her employment on the basis of her national origin (Title VII) and/or her race (§ 1981).   ECF No. 1 ¶¶ 38-49, 55-61. "[W]ithout direct evidence [of discrimination], a plaintiff may establish discrimination under the burden-shifting framework established in McDonnell Douglas." Alberti v. Rector & Visitors of Univ. of Va., No. 21-2385, --- F.4th ----, 2023 WL 2939600, at *4 n.5 (4th Cir. Apr. 14, 2023).   "[U]nder that framework, [a plaintiff's] allegations must plausibly plead that (1) [s]he is a member in a protected class, (2) [she] was discharged from employment, (3) [she] otherwise fulfilled [her employer's] legitimate employment expectations at the time of h[er] discharge and (4) the action was under circumstances that raise a reasonable inference of unlawful discrimination." Id. (citing Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 n.8 (4th Cir. 2020)); see also Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).   Title VII and § 1981 discrimination claims are, however, subject to differing causation standards.   A § 1981 claimant must allege that her race was a but-for cause of her termination, Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020), while a Title VII claimant need only allege that her protected trait was a motivating factor in her termination, Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 343 (2013).

Defendant argues that Plaintiff's Title VII discrimination claim must be dismissed because she has failed to allege that her job performance was satisfactory at the time of her termination or that she was terminated because of her national origin. ECF No. 12, at 7. The Court agrees with Defendant on both points.

For the same reasons explained above in the context of Plaintiff's ADA wrongful discharge claim, Plaintiff has not pled sufficient facts to conclude that she was meeting Defendant's legitimate employment expectations at the time of her termination as necessary to sustain her Title VII discrimination claim. Even accepting as true Plaintiff's allegation that "[d]uring her first several months of employment, Plaintiff was notified that she was doing her job in a satisfactory fashion," ECF No. 1 ¶ 10, the Complaint is devoid of factual assertions that would allow the Court reasonably to infer that Plaintiff's job performance was satisfactory at the time of her termination half a year later.[5]

The Court likewise concludes that, given the Complaint's sparse facts, Plaintiff has failed to allege that her national origin was a motivating factor in her termination, as required to state a discrimination claim under Title VII. Nassar, 570 U.S. at 343. Plaintiff alleges that, starting two months after she began working for Defendant, Plaintiff's supervisor and coworkers

---

[5] As Defendant briefly asserts in a footnote, ECF No. 12, at 12 n.4, this deficiency equally afflicts Plaintiff's § 1981 claim, which must also be dismissed on this basis.

regularly subjected her to racist remarks and that this conduct ended just over a month before she was terminated. ECF No. 1 ¶¶ 9, 11, 24. Plaintiff provides little factual detail about the circumstances of her termination. In particular, she does not include allegations regarding who terminated her. Without that detail, her allegations provide no factual basis for the Court to infer that her primary harasser (her supervisor Coffield) had any role in the decision to discharge Plaintiff. Further, in comparison to Plaintiff's claim for wrongful discharge under the ADA, there is not the same close temporal proximity between the harassment and the termination that might allow the Court to infer that Plaintiff's national origin was a motivating factor in her discharge.

Defendant similarly argues that Plaintiff's § 1981 claim must be dismissed because Plaintiff has not pled that her race was a but-for cause of her termination, as required by the Supreme Court's 2020 Comcast Corp. decision. Notwithstanding Plaintiff's efforts to distinguish Comcast Corp. as inapplicable, the Supreme Court's analysis of the district court's Rule 12(b)(6) decision applying the but-for causation standard is directly applicable here. See Comcast Corp., 140 S. Ct. at 1013-14. The Comcast Corp. Court could not have been clearer in answering whether a plaintiff must allege but-for causation at the pleading stage:

> All the traditional tools of statutory interpretation persuade us that § 1981 follows the usual rules, not any exception. To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.

Id. at 1019.

Therefore, Plaintiff's § 1981 claim must be dismissed if Plaintiff has failed to plead that, but for her race, Defendant would not have terminated her. Plainly, the Court's conclusion regarding Plaintiff's failure to allege the "motivating factor" causation element of her Title VII discrimination claim requires the same result here under § 1981's more exacting "but-for" causation standard. While Plaintiff has sufficiently alleged that she experienced near-daily disparaging remarks regarding her Chinese heritage from her coworkers and supervisor and that she was ultimately terminated, these factual allegations are insufficient to support the legal conclusion that Plaintiff would not have been terminated but for her race.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted with respect to both her Title VII national origin discrimination claim and her § 1981 racial discrimination claim.

### 2. Hostile Work Environment Claim

Plaintiff characterizes her second claim under Title VII as a claim for "harassment based on national origin." ECF No. 1, at 6. Defendant appropriately interpreted this count as a hostile

work environment claim, and Plaintiff adopted this characterization in her opposition brief. Therefore, the Court will do the same here.

As noted above, Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (cleaned up).  To state a hostile work environment claim, a plaintiff must allege that the suffered harassment "was (1) unwelcome, (2) based on [her protected characteristic], (3) sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive atmosphere, and (4) imputable to [the defendant]." E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009).

Defendant argues that, although Plaintiff alleges rude and callous behavior toward her by her supervisor and co-workers, such behavior is not sufficiently "severe or pervasive" to meet the third element. ECF No. 12, at 10-11.  To determine whether a plaintiff has sufficiently stated the third element of a hostile work environment claim, a court must analyze both the element's "subjective and objective components." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (citation omitted).  The plaintiff must show both that she "subjectively perceived the environment to be abusive" and that "the conduct was

16

such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." Id. (cleaned up). Here, Defendant appears only to challenge the sufficiency of Plaintiff's allegations with respect to the objective component.[6] The objective inquiry requires the court to "look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks and citations omitted).

Although Title VII "surely prohibits an employment atmosphere that is permeated with discriminatory intimidation, ridicule, and insult, it is equally clear that Title VII does not establish a general civility code for the American workplace." Id. (internal quotation marks and citations omitted). Therefore, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test," and "complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's

---

[6] Regardless, the subjective component is met by Plaintiff's allegations that the comments had a "terrible emotional impact" on her and that she "made known her discomfort with the repeated harassment to [her supervisor] Coffield." ECF No. 1 ¶¶ 15, 18. See Cent. Wholesalers, 573 F.3d at 176 (noting that "a victim's complaints to supervisors about harassment shows he or she believed the environment was hostile or abusive" (citation omitted)).

supervisor are not actionable under Title VII." Id. at 315-16 (cleaned up). "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of a racial epithet impacts the work environment far more severely than use by co-equals. Simply put, a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 278 (4th Cir. 2015) (internal quotation marks and citations omitted)).

Although Plaintiff's factual allegations are not overly detailed, the Court nonetheless concludes that, accepting all the well-pled factual allegations in the Complaint as true, Plaintiff has stated a hostile work environment claim under Title VII. As relevant to this claim, Plaintiff alleges the following facts:

> 11. Unfortunately, Plaintiff was subjected to harassment (constant comments about her national origin, Chinese, and appearance) – from March 18, 2019 until approximately August 8, 2019.
>
> 12. [] Edouard's direct supervisor, Connie Coffield, General Manager Norfolk Office, repeatedly made racist remarks to Edouard.
>
> 13. On nearly a daily basis, Coffield would ask why or assert that Chinese people, like Edouard, would "eat rats, cats, and dogs."
>
> 14. Coffield would encourage Edouard's coworkers to make the same jokes about eating rats, cats, and dogs. Specifically, Edouard's coworkers, Matthew Thornton and Sharmane Bernales would assert Edouard and other Chinese people would eat rats, cats and dogs.

15. Edouard would routinely smile and try to absorb the terrible emotional impact of this harassment without rebuttal.

16. Coffield additionally would question Edouard on her diminutive nature – asking why Chinese people are so tiny and why Edouard was "so skinny[,]" "so tiny[,]" and "wore heels daily."

17. Coffield did not make such disparaging remarks to any of Edouard's non-Chinese (mostly white) co-workers.

18. Eventually, Edouard made known her discomfort with the repeated harassment to Coffield. But Coffield persisted. Coffield made it a habit to corner Edouard in private situations and threaten her with termination of employment.

ECF No. 1 ¶¶ 11-18.  In challenging the sufficiency of these factual allegations to support Plaintiff's hostile work environment claim, Defendant argues that such statements about Plaintiff's eating habits and appearance are less offensive than statements described in other cases where the Fourth Circuit rejected the hostile work environment claims.  ECF No. 12, at 10.

It is true that, taken in isolation, a comment "that Chinese people, like [Plaintiff], would 'eat rats, cats, and dogs'" or a question about "why Chinese people are so tiny and why [Plaintiff] was 'so skinny[,]' 'so tiny[,]' and 'wore heels daily,'" while derogatory, would be insufficient to state a hostile work environment claim.  But the hostility of a work environment must be judged "by looking at all the circumstances." Harris, 510 U.S. at 23.  Therefore, the Court considers the factual allegations collectively, rather than in isolation.  Most significantly,

19

Plaintiff asserts that she experienced this verbal harassment <u>from her supervisor</u> Coffield "[o]n <u>nearly a daily basis</u>."   ECF No. 1 ¶ 13 (emphasis added).   Moreover, Plaintiff alleges that Coffield encouraged Plaintiff's co-workers to make similar comments to Plaintiff about eating rats, cats, and dogs, and two of them did so.   <u>Id.</u> ¶ 14.   According to the Complaint, Coffield continued making these disparaging comments even after Plaintiff "made known her discomfort with the repeated harassment." <u>Id.</u> ¶ 18.   Finally, Coffield, as Plaintiff's supervisor, increased the intimidation of the situation by threatening Plaintiff with termination.   <u>Id.</u>

The Court concludes that the supervisory status of the primary harasser, coupled with the frequency, constancy, and length of time that the harassment continued, "invest[ed the] harassing conduct with a particular threatening character." <u>Boyer-Liberto</u>, 786 F.3d at 278.   The Court therefore finds that Plaintiff's factual allegations are sufficient to state a hostile work environment claim under Title VII.[7]

---

[7] To be sure, certain details about Plaintiff's work environment remain unclear as alleged in the Complaint.   For example, it is not clear how frequently Plaintiff's co-workers participated in the harassing conduct, when and how Plaintiff made known her discomfort to her supervisor, or why or how frequently Plaintiff's supervisor threatened her with termination. Regardless, the facts as alleged are sufficient to state a hostile work environment claim.   To the extent Plaintiff moves to amend her Complaint and chooses to add additional factual allegations regarding the work environment, that would, if anything, further bolster the sufficiency of her claim at this early stage in the case.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to dismiss.  ECF No. 11.  The Court **DISMISSES** the following claims:  ADA Failure to Accommodate, ADA Wrongful Discharge, Title VII National Origin Discrimination, and § 1981 Racial Discrimination.  This dismissal is **without prejudice** to Plaintiff's right to file a motion seeking leave to file an amended complaint.  If Plaintiff elects to file such a motion, it shall be filed **within twenty-one (21) days** of the date of entry of this Order and shall be accompanied by a supporting brief that includes as an exhibit Plaintiff's proposed amended complaint.

The clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April **27** , 2023

21